## 44702. IN THE MATTER OF: PACIFIC & SOUTHERN COMPANY, INC., d/b/a WXIA-TV.
(361 SE2d 159)

Smith, Justice.

Timothy Tyrone Foster was indicted for murder, burglary, and theft by taking, and the state announced that it would seek the death

penalty. WXIA-TV was covering the trial in the Floyd County Superior Court and filed a motion to gain access to certain videotaped evidence in order to copy and televise it as part of its news coverage. The trial court denied the request, and this Court denied WXIA's motion for an expedited appeal. Foster was subsequently found guilty and the jury recommended the death sentence.[1] WXIA-TV is appealing from the order of the trial court denying its motion for access to the evidence. We affirm.

The evidence WXIA-TV sought to copy and televise was a videotaped statement Foster made to the police and a videotape of the crime scene. The district attorney and the defense attorney both objected to WXIA's motion based upon the belief that providing access to the evidence might prejudice the defendant's future rights to a fair trial. The trial court agreed and stated that the public's right to know was less than the defendant's right to a fair and impartial trial.

WXIA argues that the court's denial of its motion for access based on the court's concern for Foster's future rights to a fair and impartial trial was erroneous.

The United States Supreme Court was faced with somewhat similar facts in *Rideau v. Louisiana*, 373 U. S. 723 (83 SC 1417, 10 LE2d 663) (1963). In an interview filmed by the police, Rideau confessed that he had been the perpetrator of certain crimes. The interview was aired by the local television station during a three-day period. Later Rideau was arraigned on charges of armed robbery, kidnapping, and murder. Rideau's motion for a change of venue was denied, he was convicted, and sentenced to death. In reversing the case the Court stated: "For anyone who has ever watched television the conclusion cannot be avoided that this spectacle, to the tens of thousands of people who saw and heard it, in a very real sense *was* Rideau's trial — at which he pleaded guilty to murder. Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." Id. at 726. The Court did not even bother to inspect the *voir dire* examination of the jury. The Court determined "due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview.'" Id. at 727.

More recently the Eleventh Circuit Court of Appeals reversed the twelve-year-old murder convictions and death sentences of Wayne Carl Coleman, *Coleman v. Kemp*, 778 F2d 1487 (11th Cir. 1986), Carl J. Isaacs, and George Elder Dungee, *Isaacs v. Kemp*, 778 F2d 1482 (11th Cir. 1986), based upon presumed prejudice.[2] The *Coleman* court

---

[1] A defendant who is sentenced to death has an automatic right of review before this Court. OCGA § 17-10-35.

[2] Coleman, Isaacs, and Dungee were indicted on September 4, 1973, for the murder of

relying on *Rideau* stated, "[p]rejudice is presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held. [Cits.]" Id. at 1490.

The public has a vital interest in retaining its constitutional rights to fair and impartial trials, for when an accused does not obtain a fair trial, especially in the most heinous of cases, the public suffers. The public generally bears the expense of the numerous appeals and new trials. The victims and the other witnesses suffer the trauma of having to relive the crime and testify before another trier of fact the exact details of the crime. The families and friends are suddenly thrust back in time, sometimes as much as ten to fifteen years earlier, to memories that are extremely painful. Furthermore, the public does not understand why an obviously guilty defendant is granted a new trial many years after the initial conviction. This lack of understanding causes the public to distrust the very system that was designed to protect them.

Evidence introduced in a courtroom is presented with great care in a controlled environment. There are rules that govern its admission and a judge who is required to see that the rules are followed so that, inter alia, one piece of evidence does not attain a greater weight in the minds of the jurors. Challenges to allegedly improperly admitted evidence are frequently heard in post conviction appeals. Also, items that have an evidentiary value may be retained by the state for a reasonable length of time following a trial. *Cannington v. State*, 154 Ga. App. 557 (269 SE2d 62) (1980).

Although the appellant argues that *Napper v. Ga. Television Co.*, 257 Ga. 156 (356 SE2d 640) (1987), held that a motion cannot be denied on the basis that there may be a prejudicial impact on retrial, that is not what *Napper* held. We held in *Napper* that the pendency of Wayne Williams'[3] habeas corpus petition did not justify a *blanket non-disclosure* of the closed investigatory files. As this Court held, "once the trial has been held, the conviction affirmed on direct appeal, and any petition or petitions for certiorari denied (including to the Supreme Court of the United States), the investigatory file in the case should be made available for public inspection." Id. at 165.

Until the appeal process is completed, as outlined above, the media may not have access to the electronically produced evidence that

---

the Alday family in Donalsonville, Georgia. They each were tried and sentenced to death. Their death penalties were affirmed in: *Coleman v. State*, 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State*, 237 Ga. 105 (226 SE2d 922) (1976); and *Dungee v. State*, 237 Ga. 218 (227 SE2d 746) (1976).

[3] Wayne Williams was convicted of the murder of Nathaniel Cater and Jimmy Payne, in what was known as "The Atlanta Child Murders" case. His case was affirmed in *Williams v. State*, 251 Ga. 749 (312 SE2d 40) (1983).

the police acquired during their investigation and trial of this case. To allow the television station access to the evidence whereby it would be dispersed over the airwaves could, in subsequent motions, hearings, and, if granted, a new trial, prejudice the accused and be harmful to the public's interest.

*Judgment affirmed. All the Justices concur, except Hunt, J., who concurs specially.*

HUNT, Justice, concurring specially.

While I agree with the result, I cannot agree with the basis of the majority's opinion. In *Napper v. Ga. Television Co.*, 257 Ga. 156 (356 SE2d 640) (1987), relied on by the majority, the question was whether the closed investigatory files of the "Atlanta Child Murders" case were available to the media under the Public Records Act, OCGA § 50-18-70 et seq. Here, the two videotapes are undeniably "public" in that they had been played in open court prior to the time the media plaintiff made its request for access. The question here is whether the media is entitled to have access to, and reproduce, certain exhibits, in this case, two videotapes. That question is for the trial court, in the exercise of its discretion, and in this case, that discretion was not abused.

Unlike the line of cases cited by the majority including *Rideau v. Louisiana*, 373 U. S. 723 (83 SC 1417, 10 LE2d 663) (1963), and contrary to the implication of the majority's opinion, publicity resulting from the broadcast of the videotapes could not cause the reversal of the trial of this case, which is concluded. The majority strains the reasoning of *Rideau* and its progeny by applying it to the potential impact of publicity on a retrial which may or may not occur at some undetermined point in the future. While the majority's concerns are not invalid, the possibility of a retrial in the future and the possibility that publicity now might affect any retrial are far too speculative to form the bases of the rule established by this case.

Moreover, the majority's holding runs counter to the intent of Rule 22 of the Uniform Superior Court Rules, authorizing media broadcast of trials within the discretion of the trial court. The majority's holding is not only unnecessary to a decision in this case, but it also places an unwarranted limitation on the discretion of the trial court in deciding what aspects of a trial may be broadcast.

DECIDED OCTOBER 13, 1987.

*Powell, Goldstein, Frazer & Murphy, James C. Rawls, V. Robert Denham, Jr., Jennifer Falk Weiss,* for appellant.

*Stephen F. Lanier, District Attorney, Robert K. Finnell, Assis-*

*tant District Attorney,* for appellee.