### 46135. ATLANTA JOURNAL & ATLANTA CONSTITUTION v. LONG et al. ·
### (376 SE2d 865)

BELL, Justice.

In a previous interlocutory appeal in this civil suit we reversed an order of the superior court that prevented public access to certain pre-judgment records in the case. *Atlanta Journal & Constitution v. Long*, 258 Ga. 410 (369 SE2d 755) (1988). The issue that we examine in this appeal is whether the trial court was authorized to reconsider on remand the question of public access to the records. For the reasons that we will set forth in this opinion, we hold that under the facts of this case the trial court was not authorized to reconsider the issue of public access.

In the previous appeal we considered whether the superior court had correctly applied Uniform Superior Court Rule (USCR) 21,[1] 253 Ga. 801, 832 (eff. July 1, 1985), when the court prohibited public access to the records. After reviewing all the evidence, we reversed on the ground that the trial court had incorrectly applied Rule 21. Specifically, we held that the requirement to overcome the presumptive public right of access — that the harm otherwise resulting to the party seeking to seal the records must clearly outweigh the public interest — had not been fulfilled.

On remand the trial court vacated the order that had been the subject of the appeal. However, the court also reconsidered the question of closure, after which it entered supplementary findings and conclusions and issued another order of closure. This new order sealed from public access "all pleadings and discovery, either pretrial or post-trial, for the duration of the records' existence." At the time the court issued the order, the parties to the access proceedings had not presented any new pleadings or evidence on the question of access.

The Atlanta Journal and Constitution, movants for access and appellants in the previous appeal, then filed the present appeal, in which they contend that the trial court lacked authority to issue the new closure order after receiving the remittitur from this court. We agree with their contention. Our reasons are as follow.

---

[1] USCR 21 provides that "[a]ll court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth [in USCR 21]."

1. We base our analysis of this issue on the language of USCR 21.5, which provides that:

> Upon notice to all parties of record and after hearing, an order limiting access may be reviewed and amended by the court entering such order or by the Supreme Court at any time on its own motion or upon the motion of any person for good cause.

As we interpret this rule, it grants a superior court the discretion to reconsider an interlocutory closure order at any time for good cause,[2] as long as this court has not yet reviewed that order. However, once this court has issued a decision reviewing the trial court's order, see USCR 21.4,[3] the grounds for reviewing and amending the order become strictly limited. In this respect the order of the trial court is no different from any other interlocutory order; once an appellate court has reviewed the order and issued an opinion on it, the appellate decision becomes binding precedent that cannot be reopened by the trial court absent a change in the evidentiary posture of the case, see, e.g., *Yaeger v. Stith Equipment Co.*, 185 Ga. App. 315 (364 SE2d 48) (1987); *Modern Roofing & Metal Works v. Owen*, 174 Ga. App. 875 (1) (332 SE2d 14) (1985).

This restriction on reopening appellate decisions is mandated by the Georgia Constitution, which provides that "[t]he decisions of the Supreme Court shall bind all other courts as precedents." 1983 Ga. Const. Art. VI, Sec. VI, Par. VI. The rule is also required by the Georgia Code, which states that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court. . . ." OCGA § 9-11-60 (h).

2. In the instant case, the record has not been augmented on the issue of access to records since we considered the first appeal. We therefore hold that the superior court erred by reconsidering the question of closure and by issuing the new order in which it again sealed records in the case. Accordingly, we hereby reverse that order, and remand this case to the superior court. Upon receipt of the remittitur the trial court shall make the records in this case available to the public.

*Judgment reversed with directions. All the Justices concur, except Marshall, C. J., and Smith, J., who dissent.*

---

[2] We interpret the phrase "for good cause" in Rule 21.5 as applying to a sua sponte motion as well as to a motion by "any person."

[3] Rule 21.4 states: "A copy of the order limiting access shall be transmitted to and subject to review by the Supreme Court."

SMITH, Justice, dissenting.

This Court's earlier opinion was only an advisory opinion[4] required by Rule 21.4 of the Uniform Superior Court Rules (USCR).

A clear understanding of the USCR, their purpose, and the substantive law is necessary to understand the problem that faced the trial court and this Court. The Georgia Constitution was amended in 1983 to allow the Supreme Court, with the advice and consent of the council of the superior courts, to adopt and publish the USCR. The purpose of the USCR was to have a uniform set of rules for all of the superior courts of this state in order to "[p]rovide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions." Art 6, Sec. 9, Par. 1. The USCR were published in 253 Ga. at 804 (1985). After publication of the rules, the Preamble was amended to provide, in pertinent part:

> It is not the intention, nor shall it be the effect, of these rules to conflict with the Constitution or substantive law, either per se or in individual actions and these rules shall be so construed and in case of conflict shall yield to substantive law.

Preamble, 256 Ga. 865 (1986).

The amendment was needed because the rule-making authority was seen as a possible threat to the separation of powers. The legislative, not the judicial branch, makes the law. The Preamble was amended in order to make it clear that the rule-making authority only grants the judicial branch the power to create procedural rules for the courts. The rule-making authority was not intended as a grant of power to create new sources of jurisdiction or substantive law.

---

[4] Because this Court lacks jurisdiction to make a substantive ruling, it could only offer an advisory opinion under USCR 21 et seq. USCR 21.4 requires closure orders to be transmitted to this Court for a procedural review only. USCR does not and cannot create a new basis for jurisdiction in this Court to make a ruling on the merits. The basis for this Court's jurisdiction is created by the legislature, not the USCR. Any attempt to allow the USCR to create a jurisdictional basis for review conflicts with the constitution and statutes which provide the exclusive method of granting jurisdiction to this Court.

The majority is incorrect when it states that the "order of the trial court is no different from any other interlocutory order. . ." *Atlanta Journal & Constitution v. Long*, 259 Ga. 23, 24 (376 SE2d 865) (1989). It is different in that a closure order must be transmitted to this Court for review. It does not come to this Court by way of the legislatively enacted methods of appeal. OCGA § 5-6-34 (a) (4) provides for a direct appeal from "[a]ll judgments or orders granting or refusing applications for . . . interlocutory or final injunctions." A closure order pursuant to USCR 21 is not an order granting or refusing an application for interlocutory or final injunction. Although it could be argued that it is in the nature of an injunction, this Court has made it clear in the past that we will not allow "appealability of an order because it is 'like' an injunction [because it] will unnecessarily confuse the law." *Phillips Constr. Co. v. Cowart Iron Works*, 250 Ga. 488, 490 (299 SE2d 538) (1983).

USCR 21 et seq. contain the procedural rules for superior court judges to follow when a motion to close access to court files is made by a party to civil litigation.[5] Once a motion has been made to close a record, the trial judge must hold a hearing, except in compelling situations, USCR 21.3, and enter the closure order. If the trial judge determines that the harm otherwise resulting to the privacy of the person seeking closure clearly outweighs the public interest, USCR 21.2, the judge may enter an order which specifies: 1) the portion of the files to be closed; 2) the nature and duration of the limitation; and 3) the reason for the limitation.

The trial judge must follow the procedure in the USCR after looking to the substantive law to make the determination regarding whether or not the files should be closed.

Part of the substantive law that the trial court in this case examined was the famous case involving former President Nixon's tapes. During the criminal trial of some of former President Nixon's aides, approximately 22 hours of tape recordings were played in the courtroom to the jury and the public. Warner Communications sought access to the tapes. The District Court denied Warner's petition for access. The Court of Appeals reversed. The United States Supreme Court reversed the Court of Appeals and held: the common-law right of access to judicial records did not authorize the release of the tapes; the common-law right to access is not absolute; the decision to allow or deny access is to be left in the sound discretion of the trial judge; there was no First Amendment right to the tapes; there were no Sixth Amendment rights involved. *Nixon v. Warner Communications,* 435

---

[5] USCR 21 et seq. follows:
"21. LIMITATION OF ACCESS TO COURT FILES
All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below.
21.1 MOTIONS AND ORDERS
Upon motion by any party to any civil action, after hearing, the court may limit access to court files respecting that action. The order of limitation shall specify the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation.
21.2 FINDING OF HARM
An order limiting access shall not be granted except upon a finding that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest.
21.3 EX PARTE ORDERS
Under compelling circumstances, a motion for temporary limitation of access, not to exceed 30 days, may be granted, *ex parte,* upon motion accompanied by supporting affidavit.
21.4 REVIEW
A copy of an order limiting access shall be transmitted to and subject to review by the Supreme Court.
21.5 AMENDMENTS
Upon notice to all parties of record and after hearing, an order limiting access may be reviewed and amended by the court entering such order or by the Supreme Court at any time on its own motion or upon the motion of any person for good cause."

U. S. 589 (98 SC 1306, 55 LE2d 570) (1978).
In discussing the common-law right of access, the Court stated:

> It is clear that the courts of this country recognize a general right to inspect and copy public records and documents [cit.], including judicial records and documents. . . .
> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. *Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.* For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." [Cits.] Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, [cits.], or as sources of business information that might harm a litigant's competitive standing [cits.]. . . .
> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. *The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.* [Cit.] (Emphases supplied.)

*Nixon,* supra, 435 U. S. at 597-599.
The Eleventh Circuit Court of Appeals in considering the question of common-law access stated:

> We must begin our discussion by recognizing the presumptive common law right to inspect and copy judicial records. *Nixon,* supra at 589.
> . . . .
>
> Nevertheless, "[t]he right to inspect and copy records is not absolute. . . ." [Cits.] . . . While the presumption in favor of the common law right of access must always be kept in mind, the trial court may properly balance this right against important competing interests. This court has recently summarized these competing interests as follows:
>
> The Supreme Court has indicated a number of relevant factors in the balancing test. [The] district courts [should] look

to whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records. [Cits.] . . .

The proper balancing of the foregoing factors is a matter which is vested in the first instance in the sound discretion of the trial court. [Cit.]

*United States v. Rosenthal*, 763 F2d 1291 (11th Cir. 1985).

Both the United States Supreme Court and the 11th Circuit Court of Appeals held that the common-law right of access is not absolute and that the proper balancing of the various factors involved and the ultimate decision of access or closure is best left to the sound discretion of the trial judge. The trial court judges of Georgia have been granted extremely broad discretionary and supervisory powers with regard to their courts and the records in their courts.

The Georgia legislature expressly granted the courts of this state broad discretion when it enacted The Georgia Government Documents Act, OCGA § 50-18-50 et seq. Article Four, which deals with inspection of public records, specifically exempts from the Act any records that have been closed by court order. The statute provides, in pertinent part:

All state, county, and municipal records, *except those which by order of a court of this state* or by law are prohibited from being open to inspection by the general public, shall be open for a personal inspection of any citizen of this state. . . (Emphasis supplied.)

OCGA § 50-18-70 (a).

The manifest purpose of this exception is to grant trial court judges extremely broad discretion in determining what records should not be open for inspection by the general public. The Act includes a list of items that are exempt from public disclosure. OCGA § 50-18-72. Included are the following: "Medical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy. . ." OCGA § 50-18-72 (a) (2).

We construe[d] this clause as manifesting the intent of the General Assembly that reports which include the elements of the tort of invasion of privacy are to be exempted from the disclosure requirements of the Act.

*Athens Observer v. Anderson*, 245 Ga. 63, 65 (263 SE2d 128) (1980).

Thus, OCGA § 50-18-70 (a) grants trial courts extremely broad discretion in deciding what records it determines shall be closed in the first instance, and our interpretation of OCGA § 50-18-72 (2) specifically exempts records from disclosure if the trial court determines that they include elements of the tort of invasion of privacy.

The legislative grant of power to the trial courts is so broad that trial court judges, in their discretion, may close an entire trial to the public, not merely the records.

> During the trial in any court of any case in which the evidence is vulgar and obscene or relates to improper sexual acts and tends to debauch the morals of the young, the presiding judge shall have the right, in his discretion and on his own motion, or on the motion of the plaintiff or the defendant or their attorneys, to hear and try the case after clearing the courtroom of all or any portion of the audience.

OCGA § 9-10-3.

With regard to public records, a trial court's discretion is so broad that records a trial court judge elects to close are exempt from public disclosure, OCGA § 50-18-70 (a), and records that a trial court judge determines include the elements of invasion of privacy are exempt from public disclosure, OCGA § 50-18-72 (a) (2). A trial judge even has the power, in his discretion, to close an entire trial in which the evidence relates to improper sexual acts and tends to debauch the morals of the young, OCGA § 9-10-3.

Prior to sending the closure order to this Court, the trial court found the following facts, among other things:

> Upon examining the motion and the complaint, it became obvious to the Court that the lawsuit involved issues which "but for" the lawsuit would involve constitutional rights of privacy for all parties, common law rights of privacy and libel, if the allegations were not true; the allegations could be misused by third parties for private spite or to promote public scandal through the publication of the details of the allegations and could serve as a reservoir of libelous statements for press consumption immunized from defamation by being taken from direct quotes from official court records and thereby privileged. . . .
>
> . . . .
>
> Both the Editor and reporter [for the newspaper] conceded that a major reason for wanting access to the pleadings was to enable quotations to be attributed to the records rather than an individual source and that any publication would

have the privileged immunity from libel resulting from such public court records. . . .

All the parties have opposed any access on privacy interest under the federal constitution and common law. . . .

. . . .

The Plaintiff has sought from the inception to assert, to protect, and to preserve from public disclosure not only her own privacy interest but also those of the Defendants until they could assert such rights for themselves which they have not all done. . . .

. . . .

The parties are not public office holders, officials or employees; the issues do not involve any grave, serious or threatening matter of public policy or concern; public funds are not involved; neither a public agency or corporation nor a publicly traded private corporation is involved; two minor employees of a religious organization are involved who have not held any high offices in such institution; while titillating the insatiable interest and appetite of the public for scandal, the press would merely be pandering private interests of the parties; in the press' ethical self-constraint to decide what is newsworthy, it seeks to invade privacy rights in such a way that it would be immune either from actions for libel or for invasion of privacy by publishing court records if it alone decides to publish such matters; the parties have vigorously sought to avoid being placed under the discretion and mercy of the press not to spread their private affairs before a public which would otherwise remain ignorant of such matters. . . .

. . . .

A fundamental and historical principle of law is at stake here as a governmental interest which is that courts should be utilized to settle disputes under the rule of law to avoid self help, blood feud, vengeance or crime. If litigants fear a worse injury or the aggravation of a pre-existing emotional trauma through public and press exposure of their private affairs, they will be excluded from the courts, undermining the confidence in the rule of law. While the press and public "access" to the court induces the perception of fairness, justice, efficiency and public participation in a democratic government, such "access" may likewise drive from the courts litigation involving privacy interests, confidential relationships or trade and business secrets. These factors must also be weighed in the balance.

The parties, the Petitioner nor the Court have come up with any alternative which can protect the privacy interests without sealing the records.

In the exercise of the sound discretion of the Court, the Court finds that the privacy interests of all the parties and compelling governmental interest in preserving the judicial system as the proper forum for dispute resolution of last resort outweigh the "access rights" of the public and press. Further, such allegation could be misused to promote private spite or promote public scandal through the publication of details of the allegations and serve as a reservoir for libelous statements.

Order filed November 13, 1987.

As required by USCR 21.4 the above order closing the records was transmitted to this Court. The majority of this Court responded by concluding "that the superior court did not correctly apply Rule 21, and we therefore reverse."[6] *Atlanta Journal & Constitution v. Long,* supra, 258 Ga. 410. After a thorough discussion of USCR 21 the majority stated: "We therefore hold that the trial court's findings and conclusions are not sufficient to support the limitation of access that the court imposed." Id. at 415.

When the trial judge received our advisory opinion he held a hearing pursuant to USCR 21.5 to amend his order, and he entered another order closing the records to the public in which he set out more fully his reasons for doing so.

If we had the jurisdiction to perform anything other than a procedural review of the closure order, the question would be: "whether

---

[6] I do not agree that the trial court did not correctly apply USCR 21. The trial judge looked to the substantive law, weighed the conflicting interests involved, and in his sound discretion decided that closure would not be a violation of the substantive law and that the privacy interests of the parties outweighed the right of access.

I believe that the majority of this Court has attempted, without jurisdiction, to make a substantive ruling. It has also improperly placed a substantive interpretation on USCR 21 et seq. By holding that USCR 21 takes into account: 1) embarrassment to the parties; 2) the governmental interest in preserving the judicial system as the forum for resolving disputes; 3) the possibility that pre-judgment documents could be misused; and 4) the fact that the promotion of private settlements of litigation is in the public interest, this Court has turned USCR 21 into substantive law and has abrogated the legislature's grant of broad discretion to trial court judges. The presumption in favor of access should be kept in mind, but the trial court is to balance the presumption against the competing factors. If a trial judge is forced to begin with many of the competing factors placed on the side of the presumption in favor of access, an imbalance is created before the weighing begins. The parties' privacy interests are at a great disadvantage, and USCR 21 et seq. conflicts with existing substantive law.

The majority of this Court tore the heart out of the trial court's discretion. Neither the legislature nor the trial judges intended for us to use a review of a closure order to destroy the trial court's supervisory powers and discretion.

the media is entitled to have access to, and reproduce, certain [documents]. That question is for the trial court in the exercise of its discretion, and in this case, that discretion was not abused." *In the Matter of Pacific & Southern Co.*, 257 Ga. 484, 487 (361 SE2d 159) (1987) (Hunt, J., concurring specially). The trial court judge construed the USCR and the substantive law as giving him extremely broad discretion to make a decision that pertains to his supervisory powers. When the advisory opinion informed him that he did not properly follow the procedure in the USCR, he corrected his order. Trial court judges have the power to amend and control their orders so as to make them conform to law and justice. OCGA § 15-1-3 (6).

The trial court judge in this case has construed USCR 21 et seq. as requiring him to transmit a copy of the closure order to this Court for review. After he received our review, he construed USCR 21.5 as requiring him to hold a hearing and correct his findings.

> Generally speaking, the construction placed upon its own rules by a court of original jurisdiction is conclusive; and only in cases where it is clear that the construction given is wrong, *and* that injustice has been done, will the discretion of the judge of such a court construing its rules be interfered with by a reviewing court. [Cit.] (Emphasis supplied.)

*Roberts v. Kuhrt*, 119 Ga. 704 (46 SE 856) (1903). In this case, the trial court's construction is conclusive because it is clear that the construction of the USCR was not wrong and that an injustice has not occurred. We should not interfere with the trial court's discretion in construing the USCR.

I am authorized to state that Chief Justice Marshall joins in this dissent.

DECIDED MARCH 2, 1989.

*Dow, Lohnes & Albertson, Terrence B. Adamson, Peter C. Canfield, Anthony E. DiResta*, for appellant.

*Smith, Gambrell & Russell, Alex W. Smith, E. Kendrick Smith, Meals, Kirwan, Goger, Winter & Parks, P. Bruce Kirwan, Bouhan, Williams & Levy, Joseph P. Brennan, John J. Capo*, for appellees.