## ARTHUR TREACHER'S FISH & CHIPS OF FAIR-FAX, INC. ET AL. *v.* CHILLUM TER-RACE LIMITED PARTNERSHIP

[No. 251, September Term, 1975.]

*Decided December 3, 1975.*

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Harvey R. Clapp, III*, with whom were *Venable, Baetjer & Howard* on the brief, for appellants.

*Stanley H. Kamerow*, with whom were *Kamerow & Kamerow* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Our opinion of the Court of Appeals' opinion in the first appeal of *Arthur Treacher's v. Chillum Ter.*, 272 Md. 720 is obviously not shared by appellants. The "uncommon issue of when a lease is not a lease" was the liminal question answered in that case, in order to reach the more specific issue of what measure of damages should be used upon breach of a lease, the term of which had not yet begun.

Appellee, Chillum Terrace Limited Partnership (Chillum) had agreed with appellant, Arthur Treacher's Fish & Chips of Fairfax, Inc. (Fairfax) to renovate its building to conform to a national image of restaurants operating under the trade name of "Arthur Treacher's Fish & Chips." At the conclusion of the renovation a ten year lease was to commence at an annual rental of 10% of all gross sales but not to be less than $22,000.00 per year. Appellant, National Fast Food Corporation (National) guaranteed Fairfax's compliance with the lease agreement. When the renovations (estimated to cost Chillum $45,000 to $50,000) were

approximately one-third completed (in dollars expended, $17,500) appellants breached the agreement by notification of its cancellation and voidance.

The Court of Appeals found that the agreement breached was "both an executory contract and a present conveyance, creating between the parties both privity of contract and of estate." *Id.* at 727.

> "It follows from the application of these principles to the instrument in this case that the trial judge was correct in holding that it was a lease. He should have ruled, however, that it was merely a present conveyance of a future leasehold interest, the term of which was to commence in futuro, following completion of the improvements. Since a future leasehold interest was created which never became possessory, the allowance of unpaid rent was not a proper remedy. Nevertheless, as we have already intimated, the lease agreement was also a contract, the breach of which entitled appellee to damages appropriate to such cases.[1] "
> *Id.* at 729.

The footnote indicated by the Court read:

> "We find it unnecessary for our purposes to draw a distinction between an agreement to enter into a lease and a lease which has not yet become possessory, since, in either event, the measure of damages, being governed by contract principles, is the same."

Judge Levine, writing for the Court, then turned to what proper measure of damages should be applied where a proposed tenant has breached either a lease prior to the commencement of its term or a contract to make a lease. Indicating that the question was one of first impression in Maryland, Judge Levine found that the trial judge erred in awarding actual rent from the anticipated completion date

to the date suit was filed with the implication that future rent would be collectible as it accrued. He proceeded to review authorities elsewhere and concluded:

> "We shall follow the general rule, therefore, and adopt as *the proper measure of damages to be applied in this case* the excess of the rent reserved under the lease agreement over the reasonable rental value of the premises at the time of the breach in November 1971. With the support of two courts and the tacit authority of three others, and finding none to the contrary, we are persuaded to define reasonable rental value as that sum which the proposed lessor, by the exercise of reasonable diligence, could have obtained or did obtain as a rental from others during the entire term of the lease." *Id.* at 731. (Emphasis added).

Recalling that, at the trial, Chillum had offered testimony of three alternative methods of assessing damages, Judge Levine noted:

> "From our perusal of the record, we find support for appellee's contention that, in an apparent excess of caution, it also presented sufficient proof to support this measure of damages. But, since the determination of reasonable rental value is one to be properly made by the trier of fact, we shall remand the case for that purpose. In light of what we have said concerning the record, no further evidence need be entertained by the circuit court." *Id.* at 731.

Upon remand, the case was fully briefed and argued. The trial court held that the reasonable monthly rental value of the lease was $1,000.00, leaving a difference of $833.33 from the minimum guaranteed under the breached lease agreement. By multiplying this monthly loss, by the 120

month term of the lease, the judge arrived at a damage award of $99,999.60. It is from this award upon remand appellants come to us.

I

Appellants complain first that:

"THE TRIAL COURT ERRED IN ITS MEA-SUREMENT OF CONTRACT DAMAGES BY RELIANCE ON TESTIMONY NOT RELEVANT TO REASONABLE RENTAL VALUE AT THE TIME OF THE BREACH."

Although replete with offshoots, appellants' main thrust is at the testimony appellants assume the trial judge relied upon in determining the reasonable rental value:

"Q Now, what, in your opinion, Mr. Poretsky, was the reasonable rental value of the property on February 1, 1972, assuming you had completed construction of the building as required by the lease, and assuming that these defendants had breached and refused to take possession?

A That's a very difficult question because its rental value depends entirely upon getting an interested tenant for this particular building.

Therefore, it's a guess on my part, and I would guess about a thousand dollars a month; if I could find a tenant who wanted that building."

Appellants point out that the question presupposed the completion of the building in the Arthur Treacher image and fixed February 1, 1972 as the date from which the expert was to determine a reasonable rental, rather than using the "reasonable rental value of the premises at the time of the breach in November 1971", as directed by the Court of

Appeals.[1] Citing *M & R Builders v. Michael*, 215 Md. 340, 354 appellants contend that:

> "[i]t should not have been assumed by the Trial Court that Appellee would have proceeded to renovate its building in the image desired by Appellant Fairfax. Such an assumption is in open opposition to the damage rule prohibiting recovery of losses from 'avoidable consequences'."

We find *M & R* inapposite to the question here. *M & R* was speaking with respect to minimization of damages in a purely contractual sense. In holding that the "ordinary rule" of contract law was that "damages are not recoverable if the consequences of a breach are avoidable", Judge Horney went on to explain for the Court:

> "In other words, a plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort without risk of additional loss or injury." *M & R Builders*, 215 Md. at 354-55.

Even assuming that general rule is applicable, appellants did not read quite far enough. Judge Horney went on to say that:

> "In any event the burden of proving that losses could have been avoided by reasonable effort and expense is upon the party who broke the contract." *Id.* at 356.

Appellants point to no evidence indicating that the losses arising from their breach could have been avoided by reasonable effort and expense.

---

**1.** Appellants *do not* contend directly or inferentially that there was any fluctuation in the "reasonable rental value" during the two to three months between November 1971 and February 1, 1972.

But more significantly, we think, is the foundation of appellants' erroneous contention, *i.e.,* that "[i]t should not have been assumed by the Trial Court that Appellee would have proceeded to renovate its building in the image desired by Appellant Fairfax." Obviously that is precisely what was intended by the Court in the first appeal of this case. By using the rental under the lease as part of the damage equation, a building conforming to description of the leased premises is necessarily contemplated. It follows that the language "reasonable rental of the premises at the time of the breach" also assumed the premises to have been improved in accordance with the agreement upon which the rent was reserved under the lease. To view it otherwise would require that the court determine the "reasonable rental value" of a partially demolished building,[2] with two-thirds of its restoration complete, and subtract that from the "rent reserved under the lease agreement." The result would hardly be beneficial to appellants and the formula implausible if not absurd.

Appellants' alternate argument is equally untenable. Because the fair *market value* of the land alone was estimated at $160,000.00, and evidence elicited on cross-examination that a reasonable rate of return on land was 10%, appellants contend that the trial judge should have based the reasonable rental value on the rental value of the land alone. This overlooks two basic factual predicates. First, there is no evidence of a market of lessees who would rent vacant land. Secondly, it ignores the fact that when this land was rented to appellants it was improved by a valuable, recently used restaurant building, which was gutted only upon the strength of the lease later breached by appellants.

---

**2.** The Court of Appeals described the condition of the premises when the November cancellation interrupted the work:

". . . appellee had commenced to demolish portions of the existing structure, and had removed the equipment which had remained on the premises following the departure of the previous tenant. Upon receiving the building permit, appellee began the reconstruction process. This work was interrupted . . . ." Arthur Treacher's v. Chillum Ter., 272 Md. at 724.

## II

"THE TRIAL COURT ERRED IN ITS DECISION TO AWARD FUTURE CONTRACT DAMAGES NOT REDUCED BY THE COST SAVINGS AFFORDED APPELLEE NOR DISCOUNTED TO THEIR PRESENT VALUE AT THE TIME OF THE CONTRACT BREACH."

Appellants' next arguments presumably anticipated that we would affirm the trial court's estimation of the reasonable rental value based on the building's completion for the purpose of applying the equation directed by the Court of Appeals. They say that since appellee has not actually expended the full estimated cost of the renovation, we should credit appellants with the value of that which is left to be done. Using testimony showing actual expenditures by appellee of $17,600, as against estimated completion costs of $45,000 to $50,000, the difference of $27,400 or $32,400 should be credited to them and reduce the $99,999.60 commensurately.

The contention at first blush has certain beguiling aspects. However, appellants fail to explain why it is they who should benefit. They simply argue that, "[i]f Appellee is to be awarded the benefits of this [breached] bargain, its saved expenditures which would have provided such benefits must be subtracted from the award." They based this upon the premise that Chillum is not entitled to be put in a better position than it would have been if the contract had not been broken, citing *Tidewater Oil Co. v. Spoerer*, 145 Md. 151.

Appellants overlook the fact that, at the time of the lease agreement, the premises were improved by a completely equipped rentable restaurant. As a result of the agreement, the equipment had been removed and disposed of, and the building gutted and partially demolished to such extent that the cost to restore it to a rentable condition was estimated to range from 40,000 to 45,000 dollars. Leaving appellee with the "benefit" of the value of the renovation not yet completed hardly places it in a better position than it would have been if the agreement had not been broken. The

estimated cost to restore the building to its former (or presumably, an equivalent rentable) condition exceeds what it would have cost to complete the intended renovation.

Appellants further contend that the ultimate award should be "discounted to present value." By this, appellants mean that since the rental under the lease would have been spread over the ten year term, to provide appellee with the full damages for the ten year lease in one lump now gives it the benefit of the use of the money over the next decade that it would not have had under the lease. Since appellee is not entitled to be put in a better position than it would have been had the contract not been broken, argue appellants, again citing *Tidewater Oil Co., supra*, the trial court should have discounted the award to its present value.

Even if we had been shown Maryland authority for this principle to be applied in cases relating to "leases which are not leases," we have a specific mandate by the Court of Appeals of "the proper measure of damages to be applied *in this case*" (Emphasis added) which does not include a direction to discount the award to present value. Further, the absence of any direct evidence of that process in the original record would indicate that the Court of Appeals did not contemplate its application by the trial judge on remand since the Court expressly agreed with appellee Chillum that it had:

> "... presented sufficient proof to support this measure of damages....", *Arthur Treacher's*, 272 Md. at 731,

and that:

> "... no further evidence need be entertained by the circuit court." *Id.* at 731.

*Judgment affirmed.*
*Costs to be paid by appellants.*