A91A0683. EASTGATE ASSOCIATES, LTD. v. PIGGLY WIGGLY SOUTHERN, INC.
(410 SE2d 129)

BIRDSONG, Presiding Judge.

We granted this interlocutory appeal to consider the trial court's treatment of our decision in *Piggly Wiggly Southern v. Eastgate Assoc.*, 195 Ga. App. 10 (392 SE2d 337) ("*Eastgate* I"). The facts are set forth in that opinion and will not be restated here.

Eastgate contends the trial court erred by failing to apply the

---

holdings in the first decision. *Held*:

1. In *Eastgate* I we held "the proper measure of damages to be applied is the excess of the rent reserved under the lease agreement over *the reasonable rental value of the premises at the time of the breach*." (Punctuation omitted; emphasis supplied.) Id. at 12. No motions for rehearing and no petitions for certiorari were filed.

Nevertheless, in subsequent proceedings in this case, the trial court found that using the reasonable rental value of the premises as it existed at the time of the breach in February 1987, i.e., unimproved land, would not be appropriate: "Thus, it is fair to say that the two opinions [*Szabo Assoc. v. Peachtree-Piedmont Assoc.*, 141 Ga. App. 654 (234 SE2d 119) and *Eastgate* I] erroneously hold that the reasonable rental value of the unimproved land *at the time of the breach* is a factor to be considered for appraisal purposes." (Emphasis supplied.) Therefore, the trial court modified its opinion and elected to measure the damages using the reasonable rental value of the premises as if the building had been completed as contemplated in the lease.

A trial court, however, regardless of its good intentions, cannot decide to disregard the opinions of this court. Art. VI, Sec. V, Par. III, Const. Ga., 1983; OCGA § 5-6-10; *Atlanta Journal &c. v. Long*, 259 Ga. 23, 24 (376 SE2d 865); *Callahan v. Panfel*, 195 Ga. App. 891, 892 (395 SE2d 80). Further, absent a change in the evidentiary posture, the rulings of this court are binding on the trial court in all subsequent proceedings in this case and may not be disregarded. OCGA § 9-11-60 (h); *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 601-602 (385 SE2d 397). "Whether [*Eastgate* I] is right or wrong, it is binding on the parties." *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 122 (335 SE2d 547). " ' "Moreover, the decision of the appellate court, and any direction awarded, shall be respected and in good faith carried into full effect by the court below." ' " *Palm Restaurant of Ga. v. Prakas*, 192 Ga. App. 74, 76 (383 SE2d 584).

Additionally, we cannot adopt the "modified" measure of damages proposed by the trial court and the dissent because our prior ruling in this case is equally binding on this court even though we might now disagree with it. OCGA § 9-11-60 (h); *Gober v. Hosp. Auth. of Gwinnett*, 191 Ga. App. 498, 499 (382 SE2d 106); *Redmond v. Blau*, 153 Ga. App. 395, 396 (265 SE2d 329). Therefore, we cannot adopt the dissent's revision of the measure of damages established in *Eastgate* I by redefining "premises" because doing so changes the measure of damages established in *Eastgate* I.

In *Eastgate* I, the initial consideration was the proper measure of damages, and this court adopted the time of the breach as the point at which to measure the damages. In so doing, two things were fixed: the time in which to measure the market for renting premises and the

condition of the premises. Further, in addition to selecting the time of the breach as the point at which to measure the damages, this court also specifically rejected Piggly Wiggly's contention that the time of performance should be used in measuring the damages. Implicit in such a decision is the rejection of using the condition of the building as if it had been completed as contemplated in the lease because that would be the condition of the premises at the time of performance of the lease. Indeed, in accordance with paragraph 2 (b) of the lease, the lease would not commence until after "the leased building is completed . . . and ready for occupancy." Thus, giving *Eastgate* I the interpretation the trial court and the dissent now find appropriate completely changes the holding in *Eastgate* I.

While using the measure of damages specified in *Eastgate* I might have unintended benefits for Eastgate, the non-breaching party, using the measure of damages the trial court and the dissent now propose would give significant, unwarranted benefits to Piggly Wiggly, the breaching party. Because in most cases a comparable sale or lease is the most persuasive evidence of fair market value, it is hard to foresee circumstances in which the lease price stated in a lease for the identical property would not be considered the reasonable rental value of the premises. Therefore, using this measure of damages, the non-breaching party would recover no damages — which, of course, is the position taken by Piggly Wiggly's expert in this case. Additionally, the record contains evidence that Piggly Wiggly's breach caused the financing for the project to be withdrawn by the lender and Eastgate has been unable to find another anchor tenant with which to gain financing. Thus, having deprived Eastgate of its ability to complete the building, Piggly Wiggly would nevertheless receive the benefit of measuring the damages by assuming the building was completed. Further, the record also contains evidence showing that the market for supermarkets was more favorable at the time of the breach than at the time of performance because the market has become saturated. Therefore, the effect of this new measure of damages would be to unjustifiably inflate the reasonable rental value of the premises. Further, we must note the measure of damages established in *Eastgate* I was not proposed by Eastgate, but was urged by Piggly Wiggly, except that Piggly Wiggly asserted that the time of performance should have been used. Thus, this is not a case in which Eastgate has sought and won an unfair advantage, but one in which the other party, having successfully urged one theory, later becomes dissatisfied with the result.

We also have reservations about the measure of damages established in *Eastgate* I because we are concerned it does not accurately measure the damages in cases such as this. The cardinal rule in assessing the damages for a breach of contract is to attempt to place the

non-breaching party, insofar as possible, in the same position it would have been if the contract had not been breached. OCGA § 13-6-1. *Georgia Power &c. Co. v. Fruit Growers &c. Co.*, 55 Ga. App. 520 (190 SE 669). Neither the measure of damages established in *Eastgate* I nor those now proposed by the trial court and the dissent would accomplish that result. Instead, although Eastgate has suffered real damages, no damages may be awarded. Yet, if there had been no breach, Eastgate would have constructed the building, Piggly Wiggly would have paid its rent for the term of the lease, and Eastgate would have earned its profit on the lease, i.e., what it received from Piggly Wiggly less the amounts expended to construct the building and operation and maintenance expenses. Further, Eastgate would have constructed a shopping center and would have had an opportunity to earn rent from other tenants.

In our opinion, the proper measure of damages for a breach of an executory lease such as this should be the rental specified in the lease plus any special damages on behalf of the lessee incurred minus any amounts saved because of the breach, e.g., cost of construction of the building, operation and maintenance expenses, etc., reduced to present value. Further, it is not clear that even this measure of damages fairly compensates the non-breaching party when the breaching party was to be the anchor tenant in a shopping center because the anchor tenant's minimum rent may actually be below market value because of the recognized impact an anchor tenant would have in attracting other tenants to the shopping center, and because the loss of the anchor tenant causes the loss of minimum and percentage rent from other tenants as well as percentage rent from the anchor tenant.

Nevertheless, despite our reservations, as the evidence has not materially changed since *Eastgate* I, the holdings in that case are binding and we are not free to merely change the measure of damages because we believe we can establish a better measure of damages. OCGA § 9-11-60 (h); *Bruce v. Garges*, 259 Ga. 268, 270 (379 SE2d 783). " 'While the holding in [*Eastgate* I] on its previous appearance before this court may be reviewed and overrruled in another case, as between these parties, it must stand.' " *Redmond v. Blau*, supra.

Accordingly, the order of the trial court must be reversed and the trial court directed to render judgment on Eastgate's motion for partial summary judgment in accordance with the holdings in *Piggly Wiggly Southern v. Eastgate Assoc.*, supra.

2. Therefore, Piggly Wiggly's motion to supplement the record on appeal is denied.

*Judgment reversed with direction. McMurray, P. J., Carley, Beasley and Andrews, JJ., concur. Sognier, C. J., Banke, P. J., Pope and Cooper, JJ., dissent.*

SOGNIER, Chief Judge, dissenting.

It is my belief that in the first appearance of this case before us, this court issued an opinion which contained an ambiguity in the phrase used to measure damages. However, although our language was inapt, it need not cause an unjust result because, being ambiguous, it is susceptible to construction following established principles of contract interpretation. That is what the court did on remand in the very well-reasoned case of *Arthur Treacher's &c. v. Chillum Terrace &c. Partnership*, 347 A2d 568 (Md. 1975), where the identical language was used in an initial opinion setting the measure of damages for the anticipatory breach of a lease for a restaurant which was to have been renovated to the proposed lessee's specifications. See *Arthur Treacher's &c. v. Chillum Terrace &c. Partnership*, 327 A2d 282 (Md. 1974). When on remand the Maryland trial court interpreted that language to contemplate using the rental value that the completed, renovated space would have brought at the time of the breach, the Maryland Court of Appeals then held that was proper, because to hold otherwise would render the language in its original opinion "implausible if not absurd," id. at 571, there being "no evidence of a market of lessees who would rent vacant land." Id.

We should now use the same established principles of contract interpretation to avoid an "implausible if not absurd" result. For that reason, I concur fully in the dissent of Judge Pope.

POPE, Judge, dissenting.

In the first appearance of this case, the main issue on appeal was whether plaintiff Eastgate's measure of damages for anticipatory breach of a lease for shopping center space should include lost revenues from other tenants in the shopping center. See *Piggly Wiggly Southern v. Eastgate Assoc.*, 195 Ga. App. 10 (392 SE2d 337) (1990). We properly concluded that the damages should not include an award for losses from other tenants. See *Piggly Wiggly Southern v. Heard*, 261 Ga. 503 (405 SE2d 478) (1991). In arriving at this conclusion, however, I now believe this court became lost in a legal thicket and went on to rule erroneously that the damages should be measured by " 'the excess of the rent reserved under the lease agreement over the reasonable rental value of the premises at the time of the breach. . . .' " 195 Ga. App. at 12 (quoting *Arthur Treacher's &c. v. Chillum Terrace &c. Partnership*, 327 A2d 282, 288 (Md. 1974)). I agree with the majority opinion that the measure of damages which would best place the non-breaching party in the same position it would have been in had the lease not been breached is the amount Eastgate would have earned in rent pursuant to the lease minus the amount Eastgate saved as a result of the breach by not having to build or maintain the leased premises. See *Parker v. King*, 68 Ga.

App. 672 (23 SE2d 575) (1942); see also *Tel-Ex Plaza v. Hardees Restaurants*, 255 NW2d 794 (Mich. App. 1977).

I also agree with the majority opinion that however erroneous it may have been, the law of the case rule prevents the original opinion from being modified; right or wrong, on remittitur, the trial court was required to apply the rule announced by this court. I disagree, however, that once the case was remitted and Eastgate again moved for summary judgment the trial court improperly modified or disregarded our earlier opinion. In my opinion, the trial court merely applied the rule set forth in our earlier opinion according to the only interpretation which makes sense.

After remittitur to the trial court, Eastgate again moved for partial summary judgment and, in support of the motion, submitted the testimony of an expert witness that the value of the undeveloped tract of land on which the leased premises was to have been constructed, as of the date of the breach, was zero. The majority agrees with Eastgate's argument that the reasonable rental value of the premises at the time of the breach should be the value of the undeveloped land. Such an interpretation of this court's initial opinion would yield an absurd result. The term "premises" in our phrase "reasonable rental value of the premises at the time of the breach" refers to the premises contemplated in the lease, i.e., 38,000 square feet of finished retail space which Eastgate promised to build and Piggly Wiggly promised to lease. It would be illogical to interpret "premises" as the undeveloped land owned by Eastgate since that is by no means the subject of Piggly Wiggly's lease. The rent reserved under the lease was for finished retail space and the damages for breach of the agreement, pursuant to the only reasonable application of our previous holding, must be the difference between this sum and the reasonable rental value, as of the date of the breach, of that same space contemplated under the lease.

According to the majority, the trial court calculated damages *as if* the building had already been completed. I do not view the trial court's order this way. It merely interpreted the leased premises to be that which was actually leased: not undeveloped land, but land on which the owner promised to build a retail building. When it attempted to apply the rule of our previous opinion, the trial court correctly calculated damages by comparing the rent agreed upon in the lease to the sum the owner could have negotiated on the date of the breach for the same promise to build. No evidence on this sum was presented on motion for summary judgment so the trial court correctly denied the motion and declared that future litigation of the issue of damages should be based on such evidence.

Contrary to Eastgate's argument, by using the phrase "at the time of the breach," this court in its earlier opinion did not require

the damages in this case to be calculated by comparing the rental value of retail space which was to be built on the land to the rental value of the undeveloped land. Instead, it meant for the trial court to compare the sum Piggly Wiggly agreed to pay under the lease to the sum Eastgate could have obtained, as of the date of the breach, from another lessee for the same lease. "[A] building conforming to the description of the leased premises is necessarily contemplated." *Arthur Treacher's &c. v. Chillum Terrace &c. Partnership*, 347 A2d 568, 571 (Md. App. 1975) (in which an issue similar to the one now before us arose on the remand to the trial court of the Maryland case cited above). Compare *Williams Wagon Works v. Gunn*, 14 Ga. App. 158 (80 SE 668) (1913) (where the lessor breached an agreement to construct a building and lease it to the lessee, the measure of the lessee's damages was the difference between the rental price agreed upon and the actual rental value of the property had the building been erected). This interpretation is correctly reflected in the trial court's order.

I am authorized to state that Chief Judge Sognier, Presiding Judge Banke and Judge Cooper join in this dissent.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 — ▌

*Hurt, Richardson, Garner, Todd & Cadenhead, Harold N. Hill, Jr., James D. Comerford, Norman J. Radow*, for appellant.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Ronald T. Coleman, Jr.*, for appellee.