**FIRST DIVISION**
**ELLINGTON, C.J.,**
**BARNES and PHIPPS., P.J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 15, 2013**

# In the Court of Appeals of Georgia

A12A2099. GEORGIA FARM BUREAU MUTUAL INS. CO. v. WILLOUGHBY

BARNES, Presiding Judge.

We granted the application of Georgia Farm Bureau Mutual Insurance Company ("GFB") for interlocutory appeal to consider the trial court's treatment of our decision in *Geiger v. Georgia Farm Bureau Mutual Insurance Co.*, 305 Ga. App. 399 (699 SE2d 571) (2010). The facts are set forth in that opinion and will not be restated here. GFB contends the trial court erred by failing to apply the holdings in the first decision. We agree and reverse.

1. In *Geiger,* we reversed the trial court's grant of summary judgment on Jimmy Willoughby's claims against GFB and held that questions of fact remained "as to whether Willoughby was a member of the [named insureds'] household and, thus,

whether he was an insured to whom GFB had a duty to defend." 305 Ga. App. at 400. We further held that, because that factual question exists, the trial court erred in finding that GFB had no duty to defend Willoughby. In the final division we concluded, "Based on our holding in Division 1, we do not address the Appellants' remaining enumerations with regard to Willoughby's claims against GFB." Id. at 404 (3).

Nevertheless, in subsequent proceedings, the trial court found that "the issue of the insured status of Willoughby was not an appropriate issue to be considered by the jury, particularly as a predicate for the prosecution of [Willoughby's] tort action." Instead, the trial court held, Willoughby's claim for coverage made him a "quasi-insured" and created a "special or fiduciary relationship" that required GFB to afford him some degree of protection from harm while it resolved the coverage issue.

The trial court then found that GFB had breached this special fiduciary duty to protect Willoughby, and that this breach caused him harm because it resulted in a default judgment against him. Having found the existence of a fiduciary relationship and a breach of that duty, the court concluded that the only jury issues were whether Willoughby sustained special damages as a result of the breach, the amounts of those damages, and if so, whether he was entitled to punitive damages and attorney fees.

2

GFB argues on appeal that the trial court committed reversible error by (1) not allowing a jury to determine whether Willoughby was a member of the named insureds' household, and thus an insured to whom GFB owed a duty to defend; (2) holding that a fiduciary relationship arose as a matter of law when someone who is not a named insured makes a claim for coverage; and (3) allowing Willoughby to pursue tort and punitive damages based on GFB's failure to defend but prohibiting it from raising lack of coverage as a defense.

1. GFB contends the trial court erred in concluding that the jury should not consider whether Willoughby was an insured under the insurance policy issued to the Geigers. We agree. Absent a change in the evidentiary posture, the rulings of this court are binding on the trial court in all subsequent proceedings in this case and may not be disregarded. OCGA § 9-11-60 (h). "The decision and direction [of the appellate court's opinion] shall be respected and carried into full effect in good faith by the court below." OCGA § 5-6-10; *Security Life Ins. Co. v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000); *Eastgate Assoc. v. Piggly-Wiggly*, 200 Ga. App. 872 (1) (410 SE2d 129) (1991).

Willoughby argues that the evidentiary posture of this case has changed and that GFB waived its right to claim he was not insured by settling with the injured

party in exchange for a complete release from the $1.2 million judgment. While GFB's petition for certiorari to the Georgia Supreme Court from the decision in *Geiger* was pending, Willoughby's attorneys filed a declaratory judgment action against GFB, basically seeking to ensure that their attorney lien in the *Geiger* case attached to any payment GFB made to the injured party in the underlying premises liability suit, which ultimately resulted in a second appeal to this court in *McRae, Stegall &c. v. Georgia Farm Bureau Mutual Ins. Co.*, 316 Ga. App. 526 (729 SE2d 649) (2012). They also sought a declaration that satisfaction of the underlying suit would not extinguish Willoughby's claims for relief against GFB, that those claims "arose" when his assets were exposed to liability for the default judgment, and that his damages were at least $1.2 million plus interest, subject to credit for sums GFB might pay to satisfy the judgment in the underlying suit. Id. at 527-528.

While the declaratory judgment action was pending in the trial court and GFB's petition for certiorari was still pending in the *Geiger* case, GFB paid $690,000 directly to the estate of the injured plaintiff who had obtained the $1.2 million default judgment against him without notifying Willoughby. *McRae Stegall*, 316 Ga. App. at 528. In exchange, the estate filed with the trial court in the underlying premises liability case "a full and final satisfaction 'of the entire Judgment, specifically

4

including but not limited to all costs, pre- and post-judgment interest, and attorney fees.'" Id. at 528. The estate also released any other claims it might have against GFB. Id.

In a subsequent evidentiary hearing in the *McRae Stegall* case, GFB explained that it made the payment based on "a 'calculated business decision' to mitigate damages in the event a jury in the [*Geiger*] case decided that Willoughby was an insured under the Geiger policy and that GFB breached its duty to defend him in the premises liability case." 316 Ga. App. at 528. The trial court dismissed the declaratory judgment action, concluding that the issues were the same as those raised in *Geiger* and that the rights of the parties had already accrued, thus presenting no justiciable controversy under the Declaratory Judgment Act. Id. at 531. This court affirmed but remanded for the entry of an order dismissing the claim without prejudice. Id.

We disagree that GFB's settlement of the underlying judgment constitutes a waiver of any defenses to liability in this suit. Paying off the injured party's estate was not an admission of liability. The question of whether Willoughby was a member of the Geigers' household and therefore insured remains, as do the questions of negligence and fraud related to GFB's investigation of coverage and failure to inform

5

Willoughby that it was not going to defend the suit. We do not address whether or to what extent the settlement affects Willoughby's claims for damages, as that question is not before us.

Thus, because the substantive evidentiary posture of this case remains essentially unchanged, the trial court's determination that the jury should not consider whether Willoughby was a covered insured contradicts this court's previous ruling and directive, and is therefore reversed.

2. GFB argues that the trial court erred in ruling that Willoughby's claim to coverage created a fiduciary relationship between him and GFB as a "quasi-insured." We agree that the trial court erred in finding as a matter of law that Willoughby had a justiciable claim of insured status because GFB could not unambiguously exclude coverage under the policy, citing *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 559 (481 SE2d 850) (1997). The contract in Penn-America, however, included the standard provision that the insurer will defend even "groundless, false or fraudulent suits," and the insurer thus had a duty to defend even groundless claims asserting liability under the policy." Id. at 558-559. GFB's policy contains no such provision, and the trial court erred in concluding as a matter of law that GFB had a special relationship with Willoughby and that Willoughby suffered

6

harm based on GFB's failure to protect his interest in the underlying personal injury suit.

3. Finally, GFB contends that the trial court erred in holding that Willoughby could pursue tort damages, asserting that this court previously determined that his claims are limited to breach of contract. In making this argument, GFB quotes from Division 2 of *Geiger*, in which we affirmed the trial court's dismissal of all of the Geigers' claims against GFB, finding that they suffered no damages as a result of GFB's failure to defend Willoughby. *Geiger*, 305 Ga. App. at 403 (2). We noted in that Division that "mere failure to perform a contract does not constitute a tort," and determined that all the duties that the Geigers claimed were breached by GFB arose directly from the insurance policy. Id. Absent a contractual duty, we concluded, GFB breached no independent duty. Id. Based on this language, GFB contends that this court "expressly declined to reverse the trial court's grant of summary judgment on Willoughby's other claims."

To the contrary, however, in Division 1 of *Geiger*, we simply found questions of fact regarding Willoughby's status as an insured, held that the trial court erred in finding that GFB had no duty to defend him, and reversed the trial court's grant of summary judgment to GFB "as to Willoughby's claims," plural. *Geiger*, 305 Ga. App.

7

at 403 (1) (d). In other words, all of Willoughby's claims were reinstated. In Division 3, we said, "Based on our holding in Division 1, we do not address the Appellants' remaining enumerations with regard to Willoughby's claims against GFB." Id. at 404 (3). We did not address the merits of those claims, much less decide them against Willoughby, but remanded the case to the trial court for further proceedings. Id. at 404 (3). Further, in *McRae Stegall*, we described this action as "Willoughby's *tort* claim against GFB for failure to defend him" and as "a *tort* action against GFB for money damages for the alleged breach of GFB's duty to defend Willoughby[.]" (Emphasis supplied.) 316 Ga. App. at 527, 529. Willoughby's tort claims are not foreclosed by this court's previous opinion. It follows, of course, that the trial court also erred in prohibiting GFB from arguing that it was not liable for damages in tort because Willoughby was not covered under the policy.

This case is not a simple insurance coverage case. GFB did not simply decline to defend Willoughby because it made a good-faith determination that he was not insured. The record contains evidence that GFB investigated the injury claim for a year and declined to pay because it determined that the injury was caused solely by the injured person's negligence. When the injured party sued Willoughby, the company first said it was not going to defend the case, which prompted Willoughby

8

to contact a private attorney. Then GFB changed its mind and said it would defend the suit, and Willoughby relied on that representation to cancel his appointment with an attorney. GFB then changed its mind again, without investigating the circumstances of Willoughby's residency or notifying him, and decided not only that he was not covered, but that it was not going to answer the suit. Considering these disputed facts, in addition to the insurance coverage issue, factual issues exist relating to GFB's promise and failure to defend him, which Willoughby contends caused the personal injury suit to go into default and led to the very large uncontested damages award. The injured plaintiff recorded a fi. fa. and began post-judgment discovery, forcing Willoughby to hire counsel to try to preserve his present and future assets. Even now, more than four years post-judgment, Willoughby is still battling with GFB, which now contends that, because it paid off the underlying judgment, Willoughby has no valid claims against it.

The trial court's pretrial order establishing the issues for trial is reversed and the case is remanded for further proceedings in accordance with this decision.

*Judgment reversed. Ellington, C.J., and Phipps, P.J., concur.*