**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 10, 2021

# In the Court of Appeals of Georgia

A21A0203. DOXEY v. CRISSEY et al.

PHIPPS, Senior Appellate Judge.

This is the second appearance of this case arising out of an easement dispute between Carolyn Allen Doxey, the owner of Lots 27 and 28 in Oakton subdivision, and ten residents of Oakton subdivision who desire to utilize an easement on Lots 27 and 28. In *Doxey v. Crissey*, 355 Ga. App. 891 (846 SE2d 166) (2020), Doxey appealed the trial court's order granting declaratory judgment and injunctive relief to the residents. This Court affirmed a number of the trial court's findings, but vacated and remanded the case "for further proceedings" on whether a change in the use of the easement would cause unreasonable damage to Doxey's property or unreasonably interfere with her enjoyment of the property. Id. at 893-894 (1) (b). We further instructed the trial court, if it found that the change in the use of the easement would

not cause unreasonable damage or interference, to make clear who is entitled access to the easement. Id. at 894 (1) (b), n. 2. Following remittitur, the trial court vacated its original order and entered a new order addressing the issues this Court raised in our previous opinion. Doxey now appeals from that order. She does not challenge the trial court's findings or conclusions, but, rather, asserts that the trial court committed reversible error by entering the new order without "conducting further proceedings and without hearing evidence on the issues[.]" We agree that the trial court failed to comply with this Court's directive in our previous opinion, and, therefore, vacate the trial court's judgment and remand for further proceedings consistent with this opinion.

The underlying facts have been set forth in this Court's prior opinion:

[I]n December 1970, Clem and Carolyn Doxey purchased Lot 28 in Section VI of the Oakton subdivision, and . . . their house is located on that lot. The warranty deed conveying Lot 28 to the Doxeys referenced a ten-foot wide bridle trail easement along the east property line. Clem Doxey subsequently purchased Lot 27 in Section IV of the Oakton subdivision, and the Doxeys built a tennis court on it. In November 1995, Clem Doxey conveyed both lots to Carolyn Doxey via warranty deed, which was made subject to all easements of record and referenced the ten-foot wide bridle trail easement along the east line of Lot 28 in the legal description of Lot 28. A recorded plat of Section VI of the Oakton subdivision, which is referenced in the legal description of Lot 28 in the November 1995 warranty deed, shows a ten-foot wide bridle trail easement along the east property line of Lot 28. In 1998, a

plat was recorded showing the movement of the bridle trail easement from the east side of Lot 28 to the east side of Lot 27. Neither party has challenged the relocation of the easement.

Lots 27 and 28 of the Oakton subdivision back up to Kennesaw Mountain National Park, and the bridle trail easement connects the street in front of the Doxey property to the park. One of the trails in the park is approximately two to three feet from Doxey's back property line. Evidence was presented that some residents of the Oakton subdivision initially used the easement on Lot 28 to gain pedestrian access to the park, and later used the easement on Lot 27 for the same purpose. The only evidence of a horse using the easement came from Carolyn Doxey, who testified that in the early 1970s she saw a girl riding a horse on it.

In the early 2000s, Doxey extended a fence that ran between the back of Lot 28 and the park to cover the back of Lot 27. Initially, there was an approximately three-foot wide gate that allowed continued pedestrian access to the park from the Doxey property. At some point between 2002 and 2004, that gate was nailed shut and then removed, precluding access to the park from the Doxey property.

In 2018, ten residents of the Oakton subdivision brought an action against Carolyn Doxey for declaratory judgment and injunctive relief, seeking to permanently enjoin Doxey from obstructing or interfering with the easements on Lots 27 and 28 of the Oakton subdivision and to require Doxey to remove the fences blocking those easements. After a bench trial, the trial court determined that the plaintiffs had the right to enforce the easement on Lot 27 and declared that all residents of all sections of the Oakton subdivision had the right to continued unobstructed use of that easement as pedestrians or equestrians. The trial court permanently enjoined Doxey from obstructing or interfering with the residents' use of the easement and ordered her to remove the fence blocking the easement.

*Doxey*, 355 Ga. App. at 891-892.

3

Doxey appealed, arguing that the trial court erred by (1) considering parol evidence to determine the meaning of "bridle trail," (2) finding that the bridle trail easement had not been abandoned by nonuse, and (3) restricting the testimony of an expert. Neither the parties nor the trial court addressed or considered below the principle that a change in "the manner, frequency, and intensity of use" of the easement within the physical boundaries of the existing easement is permitted without consent of the other party, so long as the change is not so substantial as to "cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." *Parris Properties, LLC v. Nichols*, 305 Ga. App. 734, 739 (1) (b) (700 SE2d 848) (2010) (citations and punctuation omitted).

On appeal, this Court found that the phrase "bridle trail" is unambiguous. *Doxey*, 355 Ga. App. at 893 (1) (a). However, we further concluded that although the phrase used in the easement was unambiguous, the trial court did not err in concluding that the easement had not been abandoned. Id. at 894 (2). This Court pointed out that

> the transition of the easement from an access trail to the park for horseback riding to one for walking and running is consistent with a change in the "manner, frequency, and intensity of use" and would be permitted without Doxey's consent, so long as the change does not

4

cause unreasonable damage to Doxey's property or unreasonably interfere with her enjoyment of her property.

Id. at 893-894 (1) (b). Because the trial court had not considered the potential impact of this change in use, this Court remanded the case "for further proceedings on that issue[]" and for the trial court to clarify who would be entitled to access the easement if the change in use is permited. Id. at 894 (1) (b).

Following remittitur, the trial court "reviewed the file, the transcript, and the applicable law[,]" vacated its original order, and entered a new order.[1] The new order added the following pertinent findings of fact and conclusions of law:

16.
Although the easement was designated for use as a bridle trail, a change in "the manner, frequency, and intensity of use" of the easement within the physical boundaries of the existing easement is permitted without the consent of the other party, so long as the change is not so substantial as to "cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." Parris Properties, LLC v. Nichols 304 Ga App. 734, 739.

17.
The evidence shows that walkers, hikers, and runners have been using this easement since 1970 to directly access the National Park. Under the Principle of Parris Properties, LLC v. Nichols[,] supra, the easement has transitioned from an access trail to the park for horseback

---

[1] The trial court's order indicates that it held a hearing on July 29, 2020, but it is undisputed that no hearing was held following remittitur. It appears that the trial court meant to indicate the date of the original bench trial: July 29, 2019.

riding to one for walking and running is consistent with a change in the "manner, frequency, and intensity of use" and is permitted without the Defendant's consent.

18.

The issue becomes whether the change in the nature of the easement causes unreasonable damage to the Defendant's property or unreasonably interferes with her enjoyment of the property. The Court finds that it does not.

The easement has been used for walkers, runners, hikers, (the changed nature of the easement) for almost 50 years. The Defendant owns Lot 28 — where her residence is located and Lot 27 where her tennis court is located. The easement was transferred in 1988 to the side of Lot 27 farthest from the house and on the side of the tennis court opposite from the house — the east side. There is no evidence of any problem being caused to the Defendant by use of this easement, in fact, the uncontroverted evidence is that the tennis players would wave at the people using the easement.

. . .

28.

The Court orders, adjudges, and declares that the residents of all sections of Oakton Subdivision have the right to the continued unobstructed use of the private easement set out in Plaintiffs Exhibit 10 - the Plat filed for record in Plat Book 124 Page 40, across Lot 27.

Based on these findings of fact and conclusions of law, the trial court once again granted declaratory judgment and injunctive relief to the Oakton subdivision residents. Doxey appeals.

In her sole enumeration of error, Doxey contends that the trial court committed reversible error by failing to conduct "further evidentiary proceedings" "to make an

6

intelligent and reasoned ruling on the two questions posed by this Court on remand to the trial court." Specifically, Doxey asserts that the trial court violated our direction on remand by failing to hold a hearing and allow arguments by the parties prior to entering a decision. Because the trial court did not take any action that would constitute a "proceeding" prior to rendering its new order, we agree that the judgment must be vacated.

It is well settled that "[a] trial court . . . regardless of its good intentions, cannot decide to disregard the opinions of this court." *Eastgate Associates, Ltd. v. Piggly Wiggly Southern, Inc.*, 200 Ga. App. 872, 873 (1) (410 SE2d 129) (1991). "[T]he decision of the appellate court, and any direction awarded, shall be respected and in good faith carried into full effect by the court below." Id. (citation and punctuation omitted); accord OCGA § 5-6-10 ("The decision and direction [of the appellate court] shall be respected and carried into full effect in good faith by the court below."); *Rabern v. State*, 231 Ga. App. 84, 85 (1) (497 SE2d 631) (1998) (a trial court has no discretion to refuse to comply with this Court's direction). The question then is what exactly this Court's prior opinion directed the trial court to do upon remand.

In our previous opinion, this Court expressly stated in the first paragraph as follows: "For reasons that follow, we vacate the judgment of the trial court and

7

remand the case for proceedings consistent with this opinion." *Doxey*, 355 Ga. App. at 891. Within the opinion, we noted: "The trial court did not consider the potential impact of this change in use, and we therefore remand for further proceedings on that issue." Id. at 894 (1) (b). And, in a footnote, we directed: "If the trial court concludes that the easement will not cause such damage or interference, the court is also instructed to consider and make clear who is entitled to access to the easement[.]" Id. at 894 (1) (b), n. 2.

While one would think that this Court previously has addressed the meaning of the phrases "for proceedings" or "for further proceedings" when used in the context of a directive vacating and remanding a case, neither the parties nor this Court have located a case where we have defined these phrases. In fact, when vacating a case, this Court utilizes different remand language depending on the nature of the case and the issues being remanded. Sometimes this Court vacates a case and directs the trial court that a hearing must be held on remand: "On remand, the trial court *shall* hold a hearing to consider the Eighth Amendment issue, and at such hearing the parties *shall* be entitled to present additional evidence relevant to such issue." *Rabern*, 231 Ga. App. at 85 (1) (emphasis in original); see also *Barbour v. Sangha*, 346 Ga. App. 13, 17 (4) (815 SE2d 228) (2018) (this Court "remand[ed] for further

8

proceedings consistent with this opinion, including an evidentiary hearing"). Other times we include language that gives the trial court discretion to determine whether an additional hearing is required:

> [O]n remand, the court is directed to indicate the basis for its award. If the court needs supplemental evidence to determine the amount of attorney fees reasonably attributable to the prevailing claims, it may hold a hearing. Alternatively, if the court concludes it can make the required determination without such evidence, by further considering the evidence already submitted, it may do so.

*Razavi v. Merchant*, 330 Ga. App. 407, 410 (1) (c) (765 SE2d 479) (2014) (citations and punctuation omitted).

On the other hand, this Court sometimes simply remands a case for the trial court to "reconsider . . . and make appropriate factual findings and legal conclusions under [a specific] test" or standard. See *Walker v. State*, 347 Ga. App. 163, 166 (2), n. 1 (816 SE2d 849) (2018). Or, we remand for clarification of an order or ruling. See *Memar v. Jebraeilli*, 310 Ga. App. 173, 177 (2) (712 SE2d 592) (2011) (case remanded for clarification of the trial court's damage award). Under these circumstances, the trial court is not obligated to hold an evidentiary hearing or further proceedings on remand. *Walker*, 347 Ga. App. at 166 (2); *Memar*, 310 Ga. App. at 177 (2).

*Memar*, supra, appears to offer the most relevant guidance. In *Memar*, this Court reversed and remanded for the trial court to clarify its damage award. *Memar*, 310 Ga. App. at 175. The trial court did so, and it entered a new order without holding a hearing. Id. at 175-176. On appeal, the appellant argued that the trial court erred in failing to allow arguments by the parties prior to entering a decision on remand. Id. at 177 (2). This Court disagreed, concluding that our opinion simply remanded for a "clarification," and absent language "instructing the trial court to conduct further proceedings or otherwise hold a hearing on the . . . matter[,]" the trial court was not obligated to hold an additional hearing prior to entering its new order on remand. Id. at 177-178 (2). Of importance to the present case, this Court noted the following in *Memar*: "Had this Court expressly stated in *Memar I* that it was remanding the case for further proceedings, we agree that such direction would have been mandatory and that the trial court would have had no discretion in such case to refuse to comply with the direction on remand." Id. at 177 (2).

Although that principle was dicta in *Memar*, we take this opportunity to announce the rule in this case: Absent any other directive by this Court, when this Court vacates and remands a case "for proceedings" or "for further proceedings" on an issue, the trial court is obligated to hold a hearing or, at the very least, allow the

parties to submit additional briefing to address the issue on remand. This is especially true in this case, where the parties focused on whether the term "bridle trail" was ambiguous, and the parties had not briefed or addressed whether a change in the manner, frequency, and intensity of use of the easement from a bridle trail to a pedestrian trail would cause unreasonable damage to Doxey's estate or unreasonably interfere with her enjoyment of her property.[2]

In so ruling, we decline to adopt a rule based on Doxey's interpretation that vacating and remanding the case "for proceedings" or "for further proceedings" necessarily means that the trial court must hold a new trial under OCGA § 5-5-49.[3]

---

[2] We agree with Chief Judge McFadden's special concurrence that parties must be provided with notice and an opportunity to be heard. The trial court in this case violated the parties' due process rights by failing to comply with this Court's remand directive to hold "further proceedings" on the issue of the impact of the change in use of the easement prior to entering its new order.

[3] OCGA § 5-5-49 addresses the "[t]rial of cases returned for new trial by appellate courts" and states as follows:
(a) A case decided by the Supreme Court or Court of Appeals which is not finally disposed of by the decision shall stand for further hearing at the term next ensuing after the decision by the appellate court unless the lower court is in session when the decision is made, in which event it shall stand for trial during such term of the lower court.
(b) The clerk of the lower court, upon receipt of the remittitur of the appellate court, shall docket the case for trial in accordance with subsection (a) of this Code

11

OCGA § 5-5-49 has been cited in only eight Georgia cases, and in the cases actually

discussing the statute, the statute generally was applied when an appellate court

reversed – rather than vacated – the case on appeal, necessitating a new trial

following remand.[4] In fact, the Supreme Court of Georgia cited OCGA § 5-5-49 for

section.
(c) The judge presiding may in his discretion postpone the hearing of any such case to a day in the term as to him may seem reasonable; or, if necessary to give proper time for preparation, he may continue the case until the next term of the court.


[4] See *Wilson v. Wilson*, 279 Ga. 302, 303 (612 SE2d 797) (2005) ("In the absence of more specific direction by this Court, our reversal of the judgment of the Spalding County judgment was the grant of a de novo trial on all issues contained within the judgment."); *Henry v. James*, 264 Ga. 527, 531 (1) (c), n. 6 (449 SE2d 79) (1994) (footnote in case involving a speedy trial issue following remittitur from affirmance in this Court); *In the Interest of M. D. H.*, 334 Ga. App. 394, 398 (2) (779 SE2d 433) (2015) (passing reference in context of juvenile proceeding); *Belans v. Bank of America, N.A.*, 309 Ga. App. 208, 209 & 210 (1) (709 SE2d 853) (2011) (following reversal and the entry of the remittutur, the case was reinstated in the trial court and was returned to the posture it occupied prior to judgment); *Sugarloaf Mills Ltd. Partnership of Ga. v. Record Town, Inc.*, 306 Ga. App. 263, 265 (1) (701 SE2d 881) (2010) ("[F]ollowing reversal and remand (absent contrary direction from this Court), the trial court was required to allow the tenant to prove those fees at a second trial."), overruled in part on other grounds by *SRM Group, Inc. v. Travelers Property Cas. Co. of America*, 308 Ga. 404, 410 (3), n. 5 (841 SE2d 729) (2020); *Schreck v. Standridge*, 273 Ga. App. 58, 59, n. 6 (614 SE2d 185) (2005) (passing reference in footnote discussing procedural stages of a case); *Bolden v. State*, 257 Ga. App. 474, 474 (571 SE2d 393) (2002) (passing reference in criminal case that had been reversed and remanded); *Butler v. State*, 207 Ga. App. 824, 824-826 (429 SE2d 280) (1993) (addressing statute in context of criminal speedy trial demand following this Court's reversal of judgment).

12

the general rule that "where there is a judgment of reversal but no express direction of this Court to the lower court, the case stands as reversed, and a new trial must be had on the issues therein raised." *Wilson v. Wilson*, 279 Ga. 302, 303 (612 SE2d 797) (2005). Our prior opinion did not reverse the trial court's judgment without direction, thus automatically requiring a new trial. While this Court's action in vacating and remanding a case "for proceedings" or "for further proceedings" requires a "proceeding," we leave it within the trial court's discretion to determine what type of "proceeding" is necessary to allow the parties and the trial court to address an issue on remand. While a new trial may be warranted, an evidentiary hearing or further briefing by the parties may suffice under the circumstances of a case.

Here, the trial court's action in amending its initial order did not comply with this Court's directive when we remanded the case "for proceedings consistent with this opinion[,]" *Doxey*, 355 Ga. App. at 891, and "for further proceedings" on the issue of the impact of any change in use of the easement. Id. at 894 (1) (b). Despite the residents' argument that the transcript from the original trial supports the trial court's additional findings and conclusions, we hold that, as directed by this Court, a "further proceeding" was necessary. The residents argue that reading our remand directive to require an additional hearing or supplemental briefs would give Doxey

13

"a second bite at the apple." However, as stated previously, neither the parties nor the trial court had addressed or considered the issue raised by this Court's previous opinion, and, at the very least, Doxey should have been permitted to address the change in easement use and its impact on her and her property via a supplemental brief. We also reject the residents' argument that our prior opinion simply directed the trial court to reconsider or clarify an issue. This Court raised an issue regarding the easement's change in use, pointed out that "[t]he trial court did not consider the potential impact of this change in use[,]" and specifically remanded the case "for further proceedings on that issue."[5] *Doxey*, 355 Ga. App. at 894 (1) (b). Accordingly, the trial court's order is vacated and the case is remanded for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Rickman, P. J., concurs; and McFadden, C. J., specially concurs.*

---

[5] We note that our directive in footnote 2 for the trial court to "make clear" who is entitled to access to the easement is merely a request for clarification and, by itself, would not require "further proceedings." See *Memar*, 310 Ga. App. at 177 (2). However, this directive is tied to the trial court's conclusion regarding whether the change in the easement will cause unreasonable damage or interference, which does require "further proceedings." *Doxey*, 355 Ga. App. at 894 (1) (b), n. 2.

A21A0203. DOXEY v. CRISSEY et al.

MCFADDEN, Chief Judge, concurring specially.

I agree with the majority's conclusion but not its reasoning. So I specially concur.

I agree that we must remand a second time. As we explained in the first appearance of this case, the parties and the trial court initially addressed the wrong question. "Bridle trail" is unambiguous. *Doxey v. Crissey*, 355 Ga. App. 891, 894 (1) (b) (846 SE2d 166) (2020). Indisputably, use of the easement has changed from a bridle trail to a walking/running trail. The right question is whether that change in use is a permissible change. The answer to that question turns on application of the rule that "a change in the manner, frequency, and intensity of use of the easement within the physical boundaries of the existing easement is permitted without the consent of the other party, so long as the change is not so substantial as to cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." *Doxey*, 335 Ga. App. at 893-894 (1) (b) (citation and punctuation omitted).

15

I agree that the trial court erred in applying that rule and answering that question without allowing the parties an opportunity to be heard. And I agree that it is up to the trial court, in the exercise of her sound discretion, whether to hold a new trial, an evidentiary hearing, a non-evidentiary hearing, or to just allow further briefing.

But I do not agree that the parties' right to be heard arises from our use of the word "proceedings." That right has deeper roots.

The majority focuses on our remand language: "[W]e therefore remand for further proceedings[.]" *Doxey*, 355 Ga. App. at 894 (1) (b). The majority announces a new rule that, absent special direction, when we remand a case to the trial court "for proceedings" or "for further proceedings," the trial court should understand the word "proceedings" to signal that it must receive additional evidence or allow the parties to submit additional briefing.

We should not establish that rule, not because it is substantively wrong — it isn't — but because that is not what the word means. The meaning of "proceeding," according to the lengthy definition and cross-references in Black's Law Dictionary, which are set out in the margin, is broad to the point of encompassing almost

16

anything court-related or court-adjacent.[6] Our case law

[6]Black's Law Dictionary defines "proceeding," and gives numerous cross-references, as follows:

1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing. 5. Bankruptcy. A particular dispute or matter arising within a pending case — as opposed to the case as a whole.

> "'Proceeding' is a word much used to express the business done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment. As applied to actions, the term 'proceeding' may include — (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of ne exeat; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the remittitur, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort." Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure 3–4 (2d ed. 1899).

- adjudicatory proceeding. See adjudication hearing under hearing.
- administrative proceeding. See administrative proceeding.
- adversary proceeding. See adversary proceeding.
- bankruptcy proceeding. (1828) 1. bankruptcy (2). 2. Any judicial or procedural action (such as a hearing) related to a bankruptcy.
- civil proceeding. See civil proceeding.
- collateral proceeding. (18c) A proceeding brought to address an issue incidental to the principal proceeding.
- competency proceeding. (1925) A proceeding to assess a person's mental capacity.

• A competency hearing may be held either in a criminal context to determine a defendant's competency to stand trial or as a civil proceeding to assess whether a person should be committed to a mental-health facility or should have a guardian appointed to manage the person's affairs.

- contempt proceeding. (1859) A judicial or quasi-judicial hearing conducted to determine whether a person has committed contempt.

- core proceeding. See core proceeding.

- criminal proceeding. See criminal proceeding.

- custody proceeding. See custody proceeding.

- ex parte proceeding (eks pahr-tee) (18c) A proceeding in which not all parties are present or given the opportunity to be heard. — Also termed ex parte hearing.

- in camera proceeding (in kam-ə-rə) (1958) A proceeding held in a judge's chambers or other private place.

- informal proceeding. (18c) A trial conducted in a more relaxed manner than a typical court trial, such as an administrative hearing or a trial in small-claims court.

- involuntary proceeding. See involuntary bankruptcy under bankruptcy.

- judicial proceeding. (16c) Any court proceeding; any proceeding initiated to procure an order or decree, whether in law or in equity.

- legal proceeding. (17c) Any proceeding authorized by law and instituted in a court or tribunal to acquire a right or to enforce a remedy.

- noncore proceeding. See related proceeding.

- parallel proceeding. (1857) A criminal, civil, or administrative proceeding that runs concurrently or simultaneously with another relating to the same core facts.

- posttrial proceeding. (1950) Action on a case that occurs after the trial is completed.

- proceeding in rem. (18c) A proceeding brought to affect all persons' interests in a thing that is subject to the power of a state.

- proceeding quasi in rem. (1831) A proceeding brought to affect particular persons' interests in a thing.

- quasi-criminal proceeding. (1844) Procedure. A civil proceeding that is conducted in conformity with the rules of a criminal proceeding because a penalty analogous to a criminal penalty may apply, as in some juvenile proceedings. • For example, juvenile delinquency is classified as a civil offense. But like a defendant in a criminal trial, an accused juvenile faces a potential loss of liberty. So criminal procedure rules apply.

should not adopt idiosyncratic definitions of widely-understood words.

The parties' right to notice and the opportunity to be heard is rooted in the state and federal constitutions. The Fourteenth Amendment to the United States

---

- related proceeding. See related proceeding.

- special proceeding. (18c) 1. A proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately. 2. A proceeding involving statutory or civil remedies or rules rather than the rules or remedies ordinarily available under rules of procedure; a proceeding providing extraordinary relief.

- summary proceeding. (17c) A nonjury proceeding that settles a controversy or disposes of a case in a relatively prompt and simple manner. — Also termed summary trial. Cf. plenary action under action (4).

> "By summary proceedings are principally meant such as are directed by several acts of parliament for the conviction of offenders, and the infliction of penalties created by those acts of parliament. In these there is intervention of a jury, but the party accused is acquitted or condemned by the suffrage of such person only as the statute has appointed for his judge." John Wade, The Cabinet Lawyer: A Popular Digest of the Laws of England 47 (1847).

> "Summary proceedings were such as were directed by Act of Parliament, there was no jury, and the person accused was acquitted or sentenced only by such person as statute had appointed for his judge. The common law was wholly a stranger to summary proceedings." A.H. Manchester, Modern Legal History of England and Wales, 1750–1950 160 (1980).

- supplementary proceeding. (17c) 1. A proceeding held in connection with the enforcement of a judgment, for the purpose of identifying and locating the debtor's assets available to satisfy the judgment. 2. A proceeding that in some way supplements another.

- voluntary proceeding. See voluntary bankruptcy under bankruptcy.

Black's Law Dictionary (11th ed. 2019) (emphasis omitted).

Constitution and the Georgia Constitution of 1983, Art. I, Sec. I, Par. I guarantee the right to due process of law, which is,

> at its core, the right of notice and the opportunity to be heard. Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party has reasonable notice and opportunity to be heard, and to present its claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. The principles of due process extend to every proceeding[,] judicial or administrative or executive in its nature[,] at which a party may be deprived of life, liberty, or property.

*Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999) (citations and punctuation omitted).

The trial court erred in not providing notice and opportunity to be heard. Our prior opinion remanded for the trial court to consider the plaintiffs' claims under the proper legal framework, which included assessing the impact of the change in use of the easement from a horseback-riding trail to a walking-and-running trail.

The trial court erred "because the [parties were] denied the opportunity to present evidence or argument on [the issue of the impact of the change in use of the easement] prior to the trial court's ruling." *Bass v. Medy*, __ Ga. App. __, __ (1) (854

20

SE2d 763) (2021). The record and the trial transcript show that neither the parties nor the trial court raised the change-of-use issue and so that neither of the parties presented evidence on this issue or "address[ed this issue] in [their] briefs before the trial court or before this [c]ourt on appeal." *Coleman v. DaimlerChrysler Svcs. of North America, LLC*, 276 Ga. App. 336, 339 (623 SE2d 189) (2005) (remanding for consideration under the proper legal framework). "Consequently, the trial court's [judgment resolving the change-of-use issue] violated [the parties'] due-process rights because . . . [the parties] had no meaningful opportunity to be heard or prepare a defense to that [issue]." *Spruell v. Spruell*, 356 Ga. App. 722, 726 (2) (848 SE2d 896) (2020).

On remand, the trial court has discretion about how to proceed. It is the trial court's responsibility to see that our "decision and direction [are] respected and carried into full effect in good faith. . . ." OCGA § 5-6-10. How the trial court discharges this responsibility — absent direction from the appellate court — is within her sound discretion. But the trial court's exercise of that discretion must respect the parties' due process rights.

21